May it please the court. As we've laid out in the brief, this is a somewhat procedurally complicated case that we sort of have several buckets of things to talk about. We have some special conditions of supervised release that I have challenged. But before we even sort of get to those sort of constitutional issues, there's an issue about actually what was the sentence and then how was the sentence imposed. As you see, the judge, I guess, was trying to help out defense counsel to reflect a ruling that postdated the original sentencing, but before the time to appeal had expired. And so he brought counsel in and said that he was going to do a resentencing. And my position, as I've laid out in the brief, is if we're actually going to do a resentencing, that the law requires it to be a real resentencing and not a fake resentencing. This is not North Korea or Cuba. We don't do shadow court proceedings. And I would submit that if our standard here is, was it a real sentencing procedure? It did not comply with both statutory law and case law about what the district court must do. As I've laid out in the briefs under 3553 C, Congress requires the district judge to state, quote, in open court, close quote, its reasons for the sentence. Here, not only did the court engage in no analysis, but several days after the judge issued his reissued his sentence, we then have a guidelines order that further explains the guidelines issue. And I would say, Judge, that's just not a real resentencing. And so guidelines go from initially 24. Well, what was the criminal history or whatever it was? All right. So he was a category three. And then the issue was going to be whether the base offense level was a 14, a 24. Base offense level, I'm talking about. It started out at 24. And then after the sentencing, the judge said, well, it really should be 14. And that's when he called it back. Correct. And then they what you gave was not a resentencing, but the call to resensing by the government. But it was built on the basis of the 14. And then it was after that changed back to 24. Is that right? Correct, Judge. So the 24 is going to apply 24 to 14 to 24. Right. And the 24th hearing after that, there's three sentencing hearings. For Mr. Black, there were two sentencing hearings. There was another sentencing hearings. And then there was a 2255. Correct. You weren't in any of that. Correct. But the lawyer in the 2255 was different than the lawyer in the in the sentencing and resent. Correct. It was Miss Archie. Yes, Judge. And there was was it stipulated that the lawyer in the sentencing and resent were ineffective in violation of the Sixth Amendment? Judge, one of the issues in the 2255 was that trial counsel didn't file a notice of appeal. And as I understand the record. That's what I'm getting at. Right. As I understand the record. They had an obligation to file a notice of appeal and didn't do it. And but that was with a different lawyer. It was one lawyer handling the 2255 and one lawyer handling the criminal case. So in the 2255, they granted relief. The judge granted relief. Same judge. Yes, Judge Norton. Good friend of ours. He granted relief and said, we've got to resentence him again. I was the third sentencing I'm talking about. We've got to resentence him again. So the appeal time starts to run again to give him a right of appeal. The judge is trying to help you out or your client out. Right. Yes. And he granted that relief. Resentencing the third time. Started the appeal time running and directed the clerk to file a notice of appeal on behalf of Mr. Black, who's now your client. Yes, your honor. In this appeal. Yes, your honor. And that's how you get up here. And you got pointed by the fourth circuit judge. You got appointed by us. Yes, sir. All right. Good to have you here. Is there any procedural history that I recited wrong? I believe that is correct. And the government, I guess, consented to the out of time appeal. And so under the prevailing case law, the judge has to impose the same sentence to just restart the clock. But that was the as I said, the government was not conceding. There was no out of time appeal. Well, the appeal was in time. It was the one filed by the clerk on behalf of your client. That's the only notice of appeal. To move the issue of trial counsel's ineffectiveness, the government consented to having a new judgment entered. Everybody agreed they had to do it. That a notice of appeal should have been filed. And no notice of appeal was filed. And the time was expired. I'm going to fix it right now. Yes, Judge. And that lawyer was discharged? Yes, Judge. And what about the lawyer in the 2255? The 2255 was relieved, I think, in the judge's order imposing the third sentence. There's no 2255 pending. There is, I think, an issue. There might be an issue that's been put on hold pending the outcome of this. I think it has to do with whether the trial counsel. Well, there is. The 2255 is still pending. I believe, Judge, I'm going to have to check the record. But I believe that his order said that there was one issue that was going to be taken under advisory. I've heard of it. I have to tell you, to try to cut through the procedural thicket here. Is there any confusion? These two sentencing and the resentencing were two weeks apart. And it seemed to me that essentially the resentencing reached the same. As I understand, it reached the same result as the original sentencing, which was just two weeks earlier. And was there the slightest bit of confusion on the part of petitioner as to what the sentence was? Because it had been announced orally in accordance with Rogers two weeks earlier. As far as I'm able to tell, it was within a guideline sentence. And the district judge in the initial sentencing went through the 3553A factors and explained those. And then had the resentencing in order to give you a chance to appeal. That was a nice thing for the district judge to do. And I wonder if it isn't a case of no good deed goes unpunished. Where is the injustice here? Where is the confusion here? I don't see it. Judge, I would agree that Mr. Black heard the original sentence. And so he would have, if we're allowed to incorporate by reference, he heard all the judge's words. But the issue on the second sentencing, I said the judge gave a within guideline sentence. If Mr. Black actually trafficked multiple victims and one of those victims was a minor. I'm sorry to interrupt you. Because I think the question I have is related to Judge Wilkinson's question about the injustice, if any, about this sentence. But you made an argument in your brief that even the initial sentence was flawed. Because the court didn't take into account any of the various mitigating factors that had been set out at great length in a sentencing memo that your predecessor counsel had included in the record. And this wasn't a run-of-the-mill sort of colloquy, well, he's had a string of bad luck. He went into great detail about this individual's background, childhood, deprivations, history of prostitution in the family, drug abuse, et cetera, abusive father. It went on for a couple of pages. And, you know, there was absolutely no mention of any of that by the district court judge in his initial decision to sentence. And that concerns me because he just jumped right into the aggravating circumstances of the offense. So why isn't that sufficient to warrant sending this case back? Because, I mean, and maybe it may have been that the defense counsel didn't highlight it sufficiently enough in the oral presentation at the argument. But this strikes me as something more than the routine bit of mitigation evidence that you see in a proceeding that might warrant, you know, not much attention. And I don't want to be overly critical of the district court judge because he was trying to bend over backward to protect the right of appeal. But lost in all of this was the fact that this was a fairly substantial mitigation case. What about that? Judge, I would agree with you that this case can be sent back for several reasons. Either the resentencing wasn't really a resentencing, or there was a problem with the explanation in the first sentencing, or we've got these plain error on these supervised release conditions. So those are the three ways that it can go back. And I would agree that sort of however we get there, it just needs to go back to sort of fix these problems. But I'm particularly concerned about the lack of mitigation analysis because then when Mr. Black comes back in, at least he tried to address what he thought was one of the judge's concerns. And, you know, if it's a real resentencing, the judge didn't even acknowledge that and say, well, I find you to be insincere, or you didn't correct sort of what my problem was. And so, again, you know, whether it was kabuki theater or not, I just don't know. But this is not the ordinary way that sentencings are done in federal court. If I could, I'd like to briefly touch on the conditions of supervised release. The one that's sort of most troubling is the one that prohibits Mr. Black from having any unsupervised contact with minors. As I lay out, that's problematic in part because he has minor children, and we can't delegate to a probation officer the ability to actually terminate someone's parental rights. That's a condition for the judge. And so I would ask the government if they can point to anything in the record that would give the probation officer any guidance whatsoever about how to decide which types of children he can and can't have contact with. And if there's no... If K.S. was a minor, which it seems she is, it seems to me that the special condition number seven was designed to prevent a recurrence from that. And the case law, you made the point, you make the point that no, there's no men's ray here. That what the case law says is pretty clear that chance encounters and chance meetings and inadvertent contact would not be a supervised release violation. And in any event, finding a supervised release violation would have to go back up to the sentencing judge to find out. But as I understand from the case law, first of all, the unsupervised conduct with children would seem to be related not only to a 35-53-8 factor, but also related to the nature of the offense here, which involved a minor. And the case law is pretty clear that incidental, if you have incidental contact with or inadvertent contact with a minor, that's not a supervised release violation. Nobody can help that. These supervised release conditions, a district court has to rely on some form of delegation. A district court cannot, you know, sort of oversee every little detail in connection with these special conditions. He has to rely on the probation officer to do these kind of things. And I don't see the problem with that special condition number seven. Judge, one problem is that, as you mentioned, that seems in part to be driven by the notion that K.S. was a minor. But in Joint Appendix 237, one of the objections that trial counsel made was that K.S. was not a minor. And so that was just one of the things that the district judge needed to resolve. And if it turns out that there were no minors involved in what Mr. Black was doing, then that condition may or may not be appropriate substantively. That was never resolved? Correct, Judge. Did the probation officer not say she was a minor? The district judge did not resolve it. No, but he adopted the PSR. Correct. So in the first sentencing, prior to the first sentencing, trial counsel made several objections to the PSR, including the number of victims and whether any of them were minors. At the first sentencing, trial counsel withdraws the objections. Then the judge issues his first order on the guidelines, and we come back in for the second resentencing, and then trial counsel says, Judge, if I would have known what you would have said in your order, I wouldn't have withdrawn my objections. I'd like to reinstate my objections, including that K.S. is not actually a minor. Did he say he would like to reinstate his objections or that he did reinstate his objections? The trial counsel said that she was reviving her objections and she was going to stand on her papers, and there are several pages of argument about why K.S. wasn't a minor, and that's a factual issue that the judge needed to resolve. Didn't the judge adopt the PSR? In the first hearing, yes, when there were no objections. Then we get to the resentencing. I have objections. He said he didn't resolve it. Correct, Judge. At the second? After it was resurrected. Correct. And so that would drive it. Counsel, with respect to the mitigation case that my colleague has mentioned, that was in the PSR. What mention of the mitigation case was made during the in-court sentencing proceeding? I realize there was a lot in the PSR, but what mention of the mitigation case was made in the sentencing hearing? Well, Judge, first, I think it's fair for a defense counsel to assume the trial judge has read the pretrial submissions. And the trial counsel made, I mean, I would… I can't unless, you know, it's also incumbent, I think, upon counsel certainly to object to any enhancements or whatever in the PSR. Now, this doesn't concern an enhancement. This concerns mitigation. And the question I have is, obviously, you have to… There's a duty on counsel to object to the enhancements in the PSR. But what I'm interested in is what duty you think there is on the part of the attorney to reinforce what was said in the PSR and bring that to the attention of the district judge. And if the district judge hasn't explained it to your satisfaction or dealt with it to your satisfaction, isn't there some obligation on the part of counsel not to just sit there during the sentencing hearing, but to make apparent orally to the district judge, not just to rely on a PSR report, because you can say, well, assume the familiarity, but it's a lot more effective to actually make a point of it in the actual sentencing proceeding. And what I'm interested in hearing is what, during the sentencing hearing, what use or omission was made of the mitigation case? Judge, that's going to be in appendix starting at page 170. In trial counsel, she makes a specific request for a below-guideline sentence. And she starts by saying the reason for the request is as stated in our memorandum. And then from page 170 to 180, she summarizes sort of at high level many of the things that are in that memorandum there. But, again, she explicitly alerts the judge that she filed a memorandum, and that's a basis for it. But, again, she goes orally over, what, 170 to here to 179, so nine pages of transcript summarizing that sort of mitigation case. And so I would say that that was enough. Okay. I'm going to – you've got some rebuttal time, and we've given you a little extra time. So I'm going to ask Judge Diaz and Judge King if they have any further questions from you. Otherwise, we'll wait and we'll hear from you in rebuttal. Thank you, Judge. Judge King. I'm fine. I'm satisfied, Judge. I am, too. Thank you. Okay. Thank you, Mr. Anderson. And we will now hear from Mr. DeHaul. Thank you, Your Honors. May it please the Court, I'm Andrew DeHaul, and I represent the United States in this appeal. Before I get into addressing the issues we've briefed, Judge King, I did want to answer your question about the posture of the 2255. There are two claims of direct error by the district court still pending that have been stayed, and they actually dovetail into this appeal. They are, was the explanation sufficient and did the district court make a mistake by not addressing the second apology? Ms. Sargi, the 2255 lawyer, was appointed by Judge Norton specifically for a hearing on whether trial counsel failed to file a notice of appeal and was deficient in that regard. Once that issue was resolved, the purpose of her appointment was terminated. So that's the posture of that, of the 2255 at this point. So these are something other than ineffective assistance claims? Correct. That's correct, Your Honor. And so the relief that was granted was based on the ineffective assistance claim? Correct. We consented to relief being granted. You said you consented, so there had to be an agreement that counsel was ineffective and failed to file a notice of appeal, and one was filed. They had a third resentencing, and there was one filed. Correct. A notice of appeal was filed by the clerk on behalf. That's correct. Yeah, on behalf of Mr. Black, who's now the client. Right. I believe he's on his third attorney. Yeah, we have Mr. Anderson. So I just wanted to clear that up. There's something else pending, and that's fine. Go ahead, Ian. Yes, sir. So we believe that the proceedings below did ultimately produce a sound within guidelines sentence, and we're asking that it be affirmed. The argument that's being made here was that there was an argument for a downward variance or a downward departure, and what is your response to the concern that the district judge did not address the mitigation case and the plea that was made for a downward variance? So a couple points in response to that, Your Honor. First, the issue about his upbringing was tied into – the argument flowed was, I had a horrible upbringing. That led me to use drugs, which led me to get into this kind of conduct. So it was all intertwined, and that central thesis of the mitigation argument was rejected by the district judge when he said, I don't buy that. So my first point in response to that is, while there's no separate discussion of the upbringing, apart from saying, I don't buy that, that does seem to be included by the district judge saying he did not buy that overarching mitigation argument. But that addresses half of the basis for mitigation, that he didn't buy the reason for the conduct that the defendant engaged in was a result of his drug abuse. But then there's the separate just case of the defendant having suffered, as alleged in the papers, this sort of very difficult upbringing, and it went into pretty good detail about that. That in and of itself is, in my view, evidence that a district court needs to consider in deciding what should be the appropriate sentence in this case. And I think our cases are pretty clear that a district court has to engage with that argument. I hear you saying that Bessie engaged in it indirectly by torpedoing the explanation given for the conduct, but that's only half of the argument, isn't it? Well, I think the way it was presented, they were intertwined. But I understand Your Honor's concern that they could be viewed as separate. And, I mean, I would be half too candid in admitting there's no separate on-the-record discussion of that upbringing. So, I mean, I can't argue with that or quarrel with that. However, you know, I would also point out, I believe it's pages maybe 178 through 80 of the JA, where, as my friend on the other side was referring to through the mitigation argument, trial counsel says, well, I guess it's not trial counsel, it's plea counsel, says he's had a horrible upbringing, but he's been going through these different programs like Turning Leaf and other things that are available in the jail. Those have been really helpful to him. We hope that you will impose or at least allow for mental health treatment because it seems to be helping with that. And that is something that the district court did allow. So while I would acknowledge that that's not exactly an explicit on-the-record discussion of it, there is indication that there was consideration of it. Perhaps it is not completely explained as one might. So that would be my response to that. And I'll be candid, I think the facts of this case are pretty horrific for the defendant in terms of the conduct that he engaged in and pled guilty to, and it may very well be that Judge Norton might not be moved if asked to expressly consider sort of this background information. I'm just concerned about the fact that our cases suggest that there has to be some acknowledgement of the case, and it wasn't as clear to me as I would have liked. And I appreciate that, Judge Diaz. I would say that- May I? Let me ask a question with respect to a point that Mr. Anderson raised. Mr. Anderson was saying that the district court did not resolve the question of whether K.S. was a minor or not. That that was one of those things that was left unresolved. What is your response to Mr. Anderson's point? Well, I would have to agree that there is no on-the-record discussion of that at either of the sentencings. Of course, in the first one, the objections were withdrawn. If she's an adult, does the criminal history go down to 14? Go from 24 to 14? Well- It went from 24 to 14 on the basis that there were no minors involved. And then the judge said it went back to 24 because there were minors involved. But Mr. Anderson says whether K.S. was a minor was never resolved. To answer your question, Judge King, the 14 versus 24 issue, as the district judge explained in that second order from April 2018, I believe it's JA 98-99. It's a footnote that spans two pages. It's really immaterial because I'm finding that this cross-reference, which sets everyone's offense level at 30, is what drives the guidelines issue. You know, it would seem to me that in imposing special condition number seven, which relates to no unsupervised conduct with children, that the district judge was pretty plainly saying this was a minor because otherwise the special condition would not be sufficiently tied to the characteristics of the offense. So I suppose that special condition resolves the question. But I guess the question is that as a general matter, there are a number of things that are implicit in what the district court said. I think it's implicit that he found that K.S. was a minor in terms of the trafficking. And it's really quite depressing what was done with this woman. It's a very, as Judge Diaz points out, the conduct here is really bleak. And so the question with both the unresolved bit about being a minor and also about addressing the background here, it seems to me that you are right in saying that all of this was implicit. And the question I have for you is, is just being implicit enough or do district judges have to be explicit and not just be implicit? Because the point I think that your opposing counsel is making is that there was a lot, there was some shorthand here and things that should have been made explicit were only dealt with implicitly. And, you know, you don't want the sentencing here to be just an exercise in shorthand. But at the same time, the conduct here was absolutely horrendous. And I'm not sure that it is going to make a difference. My guess is if it's sent back for a fuller explanation, we'll get a fuller explanation. I would be surprised in light of Judge Norton's comments if there were any, if he did anything differently. But the question I think is being raised is the value of having district judges being explicit rather than implicit, where you're talking about quite a bit of time. Even for someone who has committed a perfectly horrendous offense, in my judgment. But this is what I think we're getting at, is the obligation of district judges to be explicit on this stuff. And I want you to, why isn't that an important value in our system? Oh, I wouldn't, I wouldn't say. Explicitness. Oh, I don't disagree that it's an important value, Judge Wilkinson. And even if I had an idea to disagree with it, I certainly acknowledge this, this court's cases saying that explanation is required. I would say as to the mitigation argument relating to the childhood, you know, we cited cases like Bullware, Palacios, I believe, forgive me if I mispronounce that, and Crouch, which talk about family history, family upbringing, those difficulties not being addressed, but nevertheless harmless error. So. Are you arguing harmless error here? I am. Yes, sir. Are you arguing a clearly guilty rule? You ever heard of that one? I'm clearly guilty of not being familiar with that rule. At some point, that's what the harmless error thing, right? Clearly guilty rule. Right. He's a bad guy, and circumstances are terrible, and we all agree with that. The question is whether the proceedings here complied with the requirements that we've laid down. Yes, sir. I understand. I would say, again, as to this upbringing mitigation argument, we are arguing harmless error on that point. You're arguing plain error on some of it. You're arguing plain error on the conditions, right? Correct. I believe my friend and I agree that it is plain error. You're saying, no, that was preserved. Well, I'm sorry. I should try and clarify. On the substantive reasonableness of those conditions, I think we agree that it is plain error controlling those. And I'll be happy to get into those conditions at this point. But I'm just talking about standard of review. You're arguing harmless error on some of it, and you're arguing plain error on some of it. That's correct. I'm sorry. What are your advantages? Because the burden lies with the petitioner. In the harmless error, the burden is obviously reversed. A lot of this difficult childhood, sometimes that can become boilerplate. But I think Judge Diaz was suggesting here that this was something more than, when you look at the PSR, that this was something more than just boilerplate. That it was more extensive in detail than a lot of the things we usually see. What's your response to that? I don't disagree that Mr. Black's upbringing was something I would ever want for myself. In terms of it being more detailed than what I typically see in sentencing memos, I won't say it's the least detailed or the most. I think I've seen things that run the gamut in terms of detail or how bad they were. I'm certainly not saying that he had a perfect upbringing at all. We would never suggest that. Can I ask you a question? You were about to get into the special conditions. I have a particular concern about special condition number two, which talks about mental health treatment. The way it was phrased, it essentially allowed the probation officer to decide when and if mental health treatment would be necessary. Why isn't that a problem in terms of delegating the condition and the implementation of the condition to the probation officer? Thank you for that. Again, we're on plain error review, so we have a burden on this side to show that this condition was plainly erroneous under this court's precedent or Supreme Court precedent. In his reply brief, counsel suggests that we haven't come forward with cases that are on point. I think that gets the standard backwards, but I took his challenge seriously. I apologize. This was not in my brief. I didn't find it until Monday. There was a case, United States v. Jones, 621 Federal Appendix 179. That is a case out of our district. It is unpublished, but it was not plain error review, and it involves the exact same language as the special condition two here. I want to make sure I quote the court correctly, because the court interpreted the condition as saying it tasked the officer with the authority to determine the type of treatment necessary to fulfill the condition, not with deciding whether treatment would be recommended or needed at all in the first place. Again, I apologize. I did not find it when I was briefing the issue, but I did want to draw to the court's attention here. So you would interpret that in the same way that it's not— I mean, there is a requirement here for mental health treatment. The only question is, you know, the scope and breadth and the particulars of the treatment. Correct. The as-deemed necessary language is leaving that detail of what is the necessary treatment, not saying probation office decide whether he even needs it at all. You've understood me correctly on that one. If we disagree with you on the harmless error point on the mitigation argument, for example, and were to send it back, we wouldn't need to address any of these issues about the supervised release, would we? Correct. That's correct. If you find procedural error, we would not need to get into it. We'd just go back and have Judge Norton hold a new sentencing hearing. Absolutely. For the fourth time. So what I wonder is, you know, as Judge King pointed out earlier, the special conditions are under plain error. And if this goes back for resentencing, there are obviously going to be objections to the special conditions. So is the plain error standard of review just wiped away? I would say that the whole issue three would be wiped away if it's sent back on that procedural issue. On the procedural issue, you say if there's another appeal that the special conditions would still be here under plain error review? Well, if there were objections made to the special conditions below, I'm sorry, I'm catching up with you. That part would be fixed. That part would be fixed. There wouldn't be any reason for us to deal with those now. They would be taken care of. Right, right. I hope I understand Judge Wilkinson's question correctly. My question is simply this. If something comes up like, and we may not need to deal with it, but if something comes up there on plain error with respect to supervised release, and then it's sent back for procedural reason, and it comes up and I'm sure objections would be made in some form or another after the remand. And so if we review another appeal here, are we still under plain error? Or is that just completely wiped away and we were considering the objections independently of plain error review? Because after the remand, an objection was raised. I think at that point, Your Honor, it would not be plain error. If to any supervised release conditions that were specifically challenged below. Okay. All right. Thank you. Judge King, do you have further questions you wish to ask? I'm fine, Your Honor. I don't either. I don't either. Thank you. Thank you, Your Honor. All right. Mr. DeHaul, we thank you very much. And Mr. Anderson has some rebuttal time. Thank you, Judge. Briefly, I certainly would agree that certainly the facts that are alleged in the pre-sentence report are terrible, but I would note that one of the objections that Judge Norton didn't resolve because, one, it was withdrawn at the first hearing but then revived at the second but not actually addressed, is that Mr. Black's attorney objected to being involved in any conduct other than with KS. And so he got a four-point enhancement on the guidelines for having multiple victims. And while certainly what happened to KS is terrible, Mr. Black would be in a better position for sentencing for 3553A if we were only talking about him and KS, not him and the other four victims that the PSR said that he was associated with. I will also note that Judge Norton didn't max him out on the guidelines. He gave him the midpoint of the guidelines. So it's not the type of thing where Judge Norton thought that Mr. Black was completely irredeemable. So I would note that as well. In response to Judge Wilkinson's question, I would agree with Mr. DeHaul that if the court vacates the sentence below and we have a resentencing, a resentencing is a resentencing from start to finish. And so if, for example, the guidelines were to become more lenient because of something that the Sentencing Commission does, we would use those new guidelines. Mr. Black's attorney would have the opportunity to make new objections. And I hope that with those objections, particularly to the supervised release conditions, that might prompt the judge to modify some of the language to say, well, for example, the one about computers, that condition as it's written would prohibit Mr. Black from ever going to PACER to pull up his case. And that's not really what we're talking about. What we're really talking about is he shouldn't be able to go to a place like Backpage. And so once Judge Norton is alerted to that, then I think that he might modify some of that language and it would avoid some of the constitutional concerns that I've raised to give Judge Norton sort of a fair shake to have that presented to him. The other point that I was going to make is about the condition of a mental health that Judge Diaz brought up. Again, the Cromer case that the USA noted as supplemental authority, which is a published decision from this court, lists as the types of things that are not allowed include, quote, whether a defendant must attend a treatment program, close quote. And as I read condition two, it is entirely up to the probation officer the day that Mr. Black gets out of prison whether Mr. Black does or doesn't need to go to a mental health program. And that would be inconsistent with Cromer if the court views that condition as leaving it up to the probation officer to decide on day one do you have to pay for him to go to treatment or not. And I think that language in the condition, as deemed necessary by the probation officer, means there is no default given to the probation office. And I think that to comply with Cromer and the other cases about mental health treatment, the judge has to set the default. So I'm going to order you to go to mental health treatment until you are released from the probation office. But that's not what this condition says. It's as deemed necessary. And so I think it's entirely unclear as to whether, you know, what is the base level here. Is it you have to go or you don't? And I would say that, you know, the judge, particularly given that we're talking about a constitutional concern, Article III, this is not some sort of abstract statutory problem. But I think that, you know, this court has to be jealous of protecting the Constitution. And particularly when we get to things like delegation, I think that's an important value that we have in society. And so with that, if there are no further questions, I would just ask you to vacate and remand for every sentence. Thank you very much, Mr. Anderson. And Judge King, Judge Diaz, do either one of you have further questions of Mr. Anderson? I do not, sir. I don't either. Thank you. Thank you very much, Mr. Anderson. Thank you very much, Mr. DeHaul. And we appreciate your being here. Mr. Anderson, I see that you are court appointed. And the court wishes to thank you for the fine job you've done on behalf of your client. Thank you, Judge. We wish you both a pleasant afternoon. And thank you for your good arguments.
judges: J. Harvie Wilkinson III, Robert B. King, Albert Diaz